P. B. Carter and Alfred A. Fraser, both of Boise, Idaho, for plaintiff.

Bothwell & Povey, of Twin Falls, Idaho, for defendants.

**ALLIANCE TRUST CO., Limited, v. HALL et al.**

No. 1822.

District Court, D. Idaho, S. D.

July 20, 1935.

CAVANAH, District Judge.

The defendants have made application for an extension of time in which to redeem their property, from the foreclosure sale, under the state law. The property was sold by special master under foreclosure decree of this court on June 15, 1934, and was bid in by the plaintiff on that date for the full amount of the judgment, amounting to $16,048.88, and a certificate of sale was issued to it. On June 22, 1934, under section 8-402 of the Idaho Codes, the defendants are granted one year from date of sale within which to redeem their property. The application for extension of the period of redemption was filed June 13, 1935. Plaintiff moves to dismiss, and urges that the statute under which defendants

make their application to grant an extension of redemption does not affect sales under foreclosure of mortgages where the mortgage was executed and recorded prior to the passage of the act, as the Supreme Court of Idaho has so decided in the case of Wilder v. Campbell, 4 Idaho, 695, 43 P. 677, and, further, that as the redemption statute under which defendants are now proceeding being chapter 36, Idaho Sess. Laws 1935, only embraces foreclosure actions in the state courts, it does not cover and apply to foreclosure in the federal courts.

A consideration of the decisions of the Supreme Court of Idaho in the Wilder Case and the Supreme Court of the United States in the case of Home Building & Loan Association v. Blaisdell et al., 290 U. S. 398, 54 S. Ct. 231, 242, 78 L. Ed. 413, 88 A. L. R. 1481, becomes necessary in order to determine which one is controlling here, having in mind the principle that the United States courts will follow the highest judicial tribunal of the state when in construing the statutes and Constitution of such state and fixing rules of property, and also the theory upon which the Supreme Court bases its opinion in the Blaisdell Case. The Wilder Case discloses that at the time the mortgage was executed the redemption period was for six months, but at the time of the foreclosure the Legislature of the state had amended the statute, extending the period of redemption to one year. At the expiration of the six months' period from the date of the sheriff's sale, the holder of the certificate of sale applied for a sheriff's deed which was refused by the sheriff on the ground that the redemptioner had one year in which to redeem. And when in construing that statute extending the period of redemption the Supreme Court of the state held that the act extending the time of redemption between the time of the execution of the mortgage and the time of the sale under the foreclosure decree could not affect the mortgage and to hold otherwise would impair the obligation of contracts, which is forbidden by both the Constitutions of the United States and Idaho (Const. U. S. art. 1, § 10; Const. Idaho, art. 1, § 16). The decision of the court in that case was based upon the sole ground that the latter act was impairing the obligation of a contract under both the Federal and State Constitutions. While the Supreme Court of the United States, in the Blaisdell Case, when in considering the act of the Legislature known as the "Minnesota Mortgage Moratorium Law" (Laws Minn. 1933, c. 339), which was an act similar to the Idaho Moratorium Act, held the Minnesota act constitutional, upon the ground that it did not violate the clause of the Federal Constitution forbidding the impairment of obligation of contracts, as the Legislature of that state had based the enactment of the act on the ground of the existence of an economic emergency, and the broad powers of a court of equity after a judicial hearing to determine conditions under which such extension of redemption should be granted. The relevant provisions of the Minnesota act, considered by the Supreme Court, authorized the state District Court to extend the period of redemption from foreclosure sale, "for such additional time as the court may deem just and equitable but in no event beyond May 1st, 1935." The extension is to be made upon application to the court, "for an order determining the reasonable value of the income on said property, or, if the property has no income, then the reasonable rental value of the property involved in such sale, and directing and requiring such mortgagor or judgment debtor, to pay all or a reasonable part of such income or rental value, in or toward the payment of taxes, insurance, interest, mortgage or judgment indebtedness at such times and in such manner as shall be fixed and determined and ordered by the court; and the court shall thereupon hear said application and after such hearing shall make and file its order directing the payment by such mortgagor, or judgment debtor, of such an amount at such times and in such manner as to the court shall, under all the circumstances, appear just and equitable. * * *" And, "provided, further, however, that if such mortgagor or judgment debtor, or personal representative, shall default in the payments, or any of them, in such order required, on his part to be done, or commits waste his right to redeem from said sale shall terminate 30 days after such default and holders of subsequent liens may redeem in the order and manner now provided by law beginning 30 days after the filing of notice of such default with the clerk of such District Court, and his right to possession shall cease and the party acquiring title to any such real estate shall then be entitled to the immediate possession of said premises." Part 1, § 4. By another provision of the act the court may at any time prior to the expiration of the

extended period of redemption alter or revise the term of the extension as changed circumstances may require. Part 1, § 5.

The provisions of the Idaho Moratorium Act which we are now considering are identical with those of the Minnesota Moratorium Act.

Two questions are thus presented:

First. Does the rule urged by the plaintiff, that the United States court will follow the highest judicial tribunal of the state when in considering the Constitution and laws of such state and fixing the rule of property, apply and govern in the present case? We have not yet a construction of the Idaho moratorium statute by the Supreme Court of Idaho. So we must look to the decision in the Wilder Case and ascertain if it applies, and is binding upon the federal courts when in deciding the power of the Idaho Legislature to enact 'the "Idaho Moratorium Act," and when doing so we must bear in mind the scope of the decision of the Supreme Court in the Blaisdell Case where the thought is advanced that the act of Minnesota, declaring an emergency to exist in the state of Minnesota, "furnished a proper occasion for the exercise of the reserved power of the state to protect the vital interests of the community," and that "emergency may afford a reason for the exertion of a living power already enjoyed," and, "in the absence of legislation, courts of equity · have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience. The 'equity of redemption' is the creature of equity. While courts of equity could not alter the legal effect of the forfeiture of the estate at common law on breach of condition, they succeeded, operating on the conscience of the mortgagee, in maintaining that it was unreasonable that he should retain for his own benefit what was intended as a mere security, that the breach of condition was in the nature of a penalty, which ought to be relieved against, and that the mortgagor had an equity to redeem on payment of principal, interest and costs, notwithstanding the forfeiture at law. This principle of equity was victorious against the strong opposition of the common-law judges, who thought that by 'the Growth of Equity on Equity the Heart of the Common Law is eaten out.' The

equitable principle became firmly established, and its application could not be frustrated even by the engagement of the debtor entered into at the time of the mortgage, the courts applying the equitable maxim, 'once a mortgage, always a mortgage, and nothing but a mortgage.' Although the courts would· have no authority to alter a statutory period of redemption, the legislation in question permits the courts to extend that period, within limits and upon equitable terms, thus providing a procedure and relief which are cognate to the historic exercise of the equitable jurisdiction. If it be determined, as it must be, that the contract clause is not an absolute and utterly unqualified restriction of the state's protective power, this legislation is clearly so reasonable as to be within the legislative competency.

"The legislation is temporary in operation. It is limited to the exigency which called it forth. While the postponement of the period of redemption from the foreclosure sale is to May 1, 1935, that period may be reduced by the order of the court under the statute, in case of a change in circumstances, and the operation of the statute itself could not validly outlast the emergency or be so extended as virtually to destroy the contracts.

"We are of the opinion that the Minnesota statute as here applied does not violate the contract clause of the Federal Constitution. Whether the legislation is wise or unwise as a matter of policy is a question with which we are not concerned.

"What has been said on that point is also applicable to the contention presented under the due process clause. Block v. Hirsh, supra [256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165].

"Nor do we think that the statute denies to the appellant the equal protection of the laws. The classification which the statute makes cannot be said to be an arbitrary one. Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037; Clark v. Titusville, 184 U. S. 329, 22 S. Ct. 382, 46 L. Ed. 569; Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350; Ohio Oil Co., v. Conway, 281 U. S. 146, 50 S. Ct. 310, 74 L. Ed. 775; Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167." Home Building & Loan Association v. Blaisdell et al., supra.

It is manifest from a review of the decision in the Blaisdell Case that the Su-

preme Court differs with the Supreme Court of Idaho, as to whether the extension of the period of redemption after a mortgage was executed violates the contract, due process, and equal protection clauses of the Federal Constitution (Amendment 14), and recognizes the reserve power in the state to declare by legislation that an emergency exists warranting an extension of the period of redemption, and that under the equitable power of the court it has jurisdiction and authority "to extend that period, within limits and upon equitable terms, thus providing a procedure and relief which are cognate to the historic exercise of the equitable jurisdiction."

■ It is no answer to say that because the Supreme Court of the state has held an act of the Legislature extending the period of redemption to be violative of the contract clause of the Federal and State Constitutions and bases its decision upon that ground alone, and that such decision is now binding upon the courts of the United States when we come to consider the later act of the state Legislature which is based upon an emergency existing in the state and which the Supreme Court of the state was not called upon to consider and decide in its decision, and also that jurisdiction and authority is granted to courts of equity to extend the period of redemption, and that the act did not infringe on either, the contract, due process, or equal protection of the law, clauses of the Constitution, we are forced to the conclusion under the decision of the Blaisdell Case that all doubt is removed as to the power of the state Legislature to enact the Moratorium Act of Idaho, and of the jurisdiction and authority of courts of equity to grant an extension of the period of redemption provided for in the Idaho law, if the facts produced come within the requirements of the Moratorium Act, and that the decision of the Supreme Court of the state in the Wilder Case is not binding upon the federal court in the present case.

■ Second. We are now brought to the inquiry whether the statute under which the defendants are proceeding is confined to foreclosure actions brought in the state courts and not in the federal courts, as it is urged that the statute refers to actions which have been and are hereafter instituted in "any Court of the State of Idaho," and therefore federal courts would not have power to grant relief made available by the Idaho Moratorium Act. Upon a review of the authorities it may be said that rights created or provided by the statute of the state to be pursued in the state courts may also be enforced and administered in the federal courts either at law or in equity, as the nature of the new rights may require. The question was settled in an early case by the Supreme Court, which has been followed by the federal courts, in the case of In re McNiel, 13 Wall. 236, 243, 20 L. Ed. 624, where McNiel was invoking a state law, the court said: "A State law may give a substantial right of such a character that where there is no impediment arising from the residence of the parties, the right may be enforced in the proper Federal tribunal whether it be a court of equity, of admiralty, or of common law. The statute in such cases does not confer the jurisdiction. That exists already, and it is invoked to give effect to the right by applying the appropriate remedy. This principle may be laid down as axiomatic in our National jurisprudence. A party forfeits nothing by going into a Federal tribunal. Jurisdiction having attached, his case is tried there upon the same principles, and its determination is governed by the same considerations, as if it had been brought in the proper State tribunal of the same locality." Cummings v. National Bank, 101 U. S. 153–157, 25 L. Ed. 903. An enlargement of equitable rights by statutes of the state may be administered by the national courts as well as by the courts of the state. Holland v. Challen, 110 U. S. 15, 3 S. Ct. 495, 28 L. Ed. 52; Frost v. Spitley, 121 U. S. 552–557, 7 S. Ct. 1129, 30 L. Ed. 1010; Gormley v. Clark, 134 U. S. 338–348, 10 S. Ct. 554, 33 L. Ed. 909; Bardon v. Land & River Improvement Co., 157 U. S. 327–330, 15 S. Ct. 650, 39 L. Ed. 719. "A party by going into a National court does not lose any right or appropriate remedy of which he might have availed himself in the State courts of the same locality. The wise policy of the Constitution gives him a choice of tribunals." Davis v. Gray, 16 Wall. 203–221, 231, 21 L. Ed. 447; Cowley v. N. P. R. Co., 159 U. S. 569, 16 S. Ct. 127, 40 L. Ed. 263; United States v. Leslie (C. C.) 167 F. 670–674; Frank et al. v. Butler County, Neb. (C. C. A.) 139 F. 119–126; Grover v. Merritt Development Co. (D. C.) 1 F.(2d) 917.

The term "Court of Record of the State" is not limited to courts which derive their jurisdiction from state laws only,

672

but includes, as well, federal courts, who are regarded as domestic courts as well as state courts in enforcing the same laws. 2 Words and Phrases, First Series, page 1689.

It results from the views expressed that the motion to dismiss is overruled, and plaintiff is given 10 days within which to answer defendant's application.