**POLIS v. CREEDON.**

No. 405.

United States Emergency Court of Appeals
Heard at Philadelphia, Pa., May 5, 1947.

Decided June 11, 1947.
Rehearing Denied June 27, 1947.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

Philip S. Polis, of Philadelphia, Pa. (Charles Polis, of Philadelphia, Pa., on the brief), for complainant.

Charles P. Liff, of Washington, D. C. (Carl A. Auerbach, Harry H. Schneider, Betty L. Brown and Eleanore R. Kerber, all of Washington, D. C., on the brief), for respondent.

McALLISTER, Judge.

Complainant is the owner of a building in Philadelphia containing six furnished housing units which were first rented in 1944, subsequent to the effective date of the Rent Regulation for Hotels and Rooming Houses in the Philadelphia Defense-Rental Area,[1] which was July 1, 1942. These units consisted of three sleeping rooms, and three two-room apartments. The first rents received by complainant, therefore, became the maximum rents for the accommodations in question under the provisions of the Regulation,[2] subject to reduction by the Administrator,[3] if higher than the rents generally prevailing in the area for comparable accommodations on the maximum rent date— which was the level prevailing during the thirty-day period ending March 1, 1942.

On October 16, 1944, the Area Rent Director instituted proceedings to decrease the maximum rents (which were the "first rents") for the subject accommodations on the ground that they were higher than the generally prevailing rents for comparable accommodations on the maximum rent date. Written notices were served on complainant, who was in the armed forces at his post at Columbus, Ohio. By letter dated October 23, 1944, the owner designated his brother, Philip S. Polis, as his counsel and requested thirty days in which to file objections to the proposed decrease of rents. The extension of time was granted and objections in writing were filed by the owner's attorney on November 28, 1944. On the same date, the subject accommodations and the comparable accommodations, which had already been inspected by a duly qualified rent inspector, were reinspected at the request and in the company of the owner's attorney. On consideration of complainant's objections and the reports of the inspection and re-inspection of the subject premises and the comparable accommodations, an order decreasing the maximum rents was issued on December 7, 1944. Complainant then filed an application for review which was denied on March 19, 1945. Thereafter, complainant filed protest in which he contended that the "first rents" charged by him were not above "comparability"; that the rent inspector was biased and unfair; that there was denial of due process in the proceedings before the Area Rent Director; and that the Rent Director's orders decreasing the maximum rents were in violation of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, 50 U.S.C.A.Appendix, § 501 et seq. Request for oral hearing was denied and following the recommendation of a Board of Review, the Administrator denied the protest, and the present complaint was filed.

■ We have examined the record with reference to complainant's claim that the Administrator's determinations of comparability were unreasonable and were not sustained by the evidence, and our conclusion is that this contention is without merit. The Administrator had before him evidence of comparable accommodations submitted both by the rent inspector for the Philadelphia Defense-Rental Area and complainant's witnesses. The various affidavits of the rent inspector gave a complete description of the accommodations and their rental features, as well as the information relating to the accommodations which he considered comparable to the units owned by the complainant. All of these matters were fully discussed in the affidavits, and the expert opinion of the inspector as to the rent that should be properly charged for the subject units was set forth. It would serve no purpose to rehearse the details of the Rent Director's adjustments for comparability and his opinions as to rental values, or the Administrator's conclusions on this subject. From an examination of the record, we are of the opinion that the rent inspector's findings were impartial and the Administra-

---

[1] 8 F.R. 7334.
[2] Section 4(b).

[3] Section 5(c).

tor's conclusions were sustained by the evidence.

■ Complaint that the inspector, upon whose report the Administrator relied, considered an insufficient number of comparables—and only two single-room units—is contradicted by the record, which reveals consideration of 20 single-room units and 7 two-room units. These included all of the units which were suggested by complainant as being comparable to the subject units. Complainant makes no suggestion as to any units which he claims the inspector should have considered, but failed to consider. It is sufficient that such a representative number of comparables be considered as may form a basis for the foundation of expert judgment. Sirianni v. Bowles, Em.App., 1945, 148 F.2d 343. There was ample evidence upon which to base reasonable findings as to comparable accommodations.

■ With regard to the alleged improper failure of the Administrator to consider claimed superior attributes of complainant's accommodations, it appears that the Administrator took into account all those which might reasonably be considered to have a bearing upon the question of the rental value of comparable accommodations. The fact that the building in which the subject units are located is larger than certain of the buildings in which comparable units were found, is not of itself of importance with reference to the rental value of the units therein located, and it appears that both the inspector and the Administrator gave consideration to the relative size of the various units. Other items such as floors, closets, heating systems, and other equipment and construction which complainant claims were ignored, clearly appear to have been considered in arriving at the rental valuations. The charge that the report of the inspectors should have been discredited on the grounds of bias is not sustained by an examination of the record.

■ We come, then, to the objection that complainant was denied due process of law because of the fact he was denied opportunity to file objections prior to the Rent Director's order; that he was refused access to official records; and that no hearing was held before the Rent Director. The record, however, discloses that complainant was afforded an opportunity to file objections prior to the entry of the order of the Area Rent Director and that through his counsel, written objections were filed before such order. As a matter of fact, complainant had requested a thirty-day extension in which to file objections and the order was not entered until the expiration of such extension and subsequent to the filing of written objections. As to his contention that the order was entered without prior notice to him, it appears that he was served with notice of proceedings, in reply to which he designated his brother as his counsel; that thereafter, complainant's counsel accompanied the rent inspector on a re-inspection of the subject accommodations as well as a further inspection of the accommodations relied upon by the Area Rent Director as comparable to the subject units. In addition, the rent inspector and complainant's counsel also inspected the accommodations which were suggested by complainant as being comparable to the subject units. It was after this tour of inspection that written objections were filed by complainant's counsel prior to the order of the Rent Director.

■ Complainant's contention that he was denied an opportunity to file objections prior to entry of the Rent Director's order, and, also, that such order was entered before the expiration of an extension of time granted him to file objections, is wholly unwarranted. The claim apparently is based upon the pretension that complainant was not represented by anyone in these rent proceedings. On October 23, 1944, as previously mentioned, complainant wrote the Area Office and stated: "Philip S. Polis, Esq., is my counsel." The rent inspector, therefore, accompanied complainant's counsel to the various premises which he had concluded were comparable to those of complainant and made a complete re-inspection in his presence. Such counsel engaged in consultation with the inspector with regard to different matters concerning the maximum rentals, and examined numerous records in the Area Office, which were made available to him as complainant's representative. Counsel then filed written objections on behalf of complainant before the

Rent Director entered any order whatever. These objections fill 4½ closely printed pages of the record. They were not signed or verified, but it is admitted that they were prepared and filed by complainant's designated counsel. Subsequently, in a rather intemperate letter to the Area Rent Director, seeking to avoid the effect of the Director's order, complainant denied that he had been represented by counsel in the proceedings and, as proof of such claim, alluded to a letter which he had previously written November 3, 1944, in which he had asked the Area Office to communicate in the future with him by mail, "and if you wish, send a copy to P. S. Polis, Esq."—the attorney whom he had appointed as his counsel in his letter to the Area Office a little more than a week previously. Complainant's letter to the Administrator was not sufficiently equivocal to raise any doubt that his brother still continued to represent him as his counsel. It may also be remarked that this same counsel argued the case on complainant's behalf before this court. There is nothing meritorious in complainant's claim that he was not represented by counsel throughout the entire proceedings.

 Complainant's attack on the Regulation in which it is declared that the comparability standard therein contained is too vague and uncertain to support a valid order is contrary to our adjudications. Chatlos v. Brown, Em.App., 1943, 136 F.2d 490; Northwood Apartments v. Brown, Em.App., 1943, 137 F.2d 809; Equitable Trust Co. v. Bowles, Em.App.,1944, 143 F.2d 735. See also Mortgage Underwriting & Realty Co. v. Bowles, Em.App., 1945, 150 F.2d 411.

 We find no merit to the argument that it was improper to deny complainant an oral hearing before the Area Rent Director. Direct Realty Co. v. Porter, Em.App., 1946, 157 F.2d 434. He received an adequate hearing before the Administrator and it was upon such hearing de novo that the order was entered finally determining the maximum rents for complainant's units.

 Complainant attacks the administrative proceedings on the ground that the Area Rent Director was barred from taking action to decrease his maximum rents because of the prohibitions contained in the Soldiers' and Sailors' Civil Relief Act of 1940, as amended.[4] Complainant relies upon Section 205 [5] of the Act which provides: "The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any * * * proceeding in any * * * board * * * or other agency of government by or against any person in military service." This section only relates to the extension of time in statutes of limitations which would otherwise run against persons during the period during which they served in the armed forces. It is inapplicable to the situation in this case.

 The section of the statute which is most nearly pertinent is Section 201,[6] which provides for a stay of proceedings in cases involving a person who is in military service, on the application of such person or another acting on his behalf, unless the court should find that such person's ability to prosecute or defend the action is not materially affected by reason of his military service. But this, in the language of the above section, applies only to "any action or proceeding in any court." The term, "court," as used in the Act, means any court of competent jurisdiction of the United States, or of any state, whether or not a court of record.[7] The proceedings before the Area Rent Director and the Administrator were not, therefore, actions or proceedings before a court within the meaning of that term as defined in the Act. The statute relied upon by complainant is inapplicable to the circumstances of this case. When complainant, although in military service, determined upon operating the business of his rooming house, he became subject to the provisions of the Rent Regulation. Congress did not provide that owners of hotel or housing premises, because of service in the armed forces, could avoid compliance with the rent control statute and regulations during the entire pendency of their military service, simply because they were not pres-

---

[4] 50 U.S.C.A.Appendix, § 501 et seq., 54 Stat. 1178.

[5] 50 U.S.C.A.Appendix, § 525.

[6] 50 U.S.C.A.Appendix, § 521.

[7] 50 U.S.C.A.Appendix, § 511(4).

ent during the period of rent control at the place where their premises were located. In this case, complainant was actually represented in Philadelphia by his brother, a lawyer, throughout all of the proceedings. He was in no way denied due process of law. We have considered various other contentions advanced on behalf of complainant but find them without merit.

In accordance with the foregoing, a judgment will be entered dismissing the complaint.